IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| AMERICAN TRUCKING AND TRANSPORTATION INSURANCE COMPANY, A RISK RETENTION GROUP, a Montana corporation,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>ACEWAY LOGISTICS, INC., a Delaware corporation, ANDY KHERA, an individual, ARK INSURANCE (US), INC., a Delaware corporation, BAJA FREIGHT, LTD., a Delaware corporation, BLUEWAY SERVICES, LLC, a Delaware limited liability company, BNK TRANSPORT, INC., a Delaware corporation, CA DEDICATED, LTD., a Delaware Corporation, CHARGER LOGISTICS USA, INC., a Delaware corporation, RAV LOGISTICS GROUP, LTD., a Delaware corporation, and ZIP EXPRESS US, LTD., a Delaware corporation,<br><br>　　　　　Defendants. | CV 24–116–M–DLC<br><br><br>ORDER |

1

ACEWAY LOGISTICS, INC., a Delaware corporation, ARK INSURANCE (US), INC., a Delaware corporation, BAJA FREIGHT, LTD., a Delaware corporation, BLUEWAY SERVICES, LLC, a Delaware limited liability company, BNK TRANSPORT, INC., a Delaware corporation, CA DEDICATED, LTD., a Delaware corporation, CHARGER LOGISTICS USA, INC., a Delaware corporation, RAV LOGISTICS GROUP, LTD, a Delaware corporation, ZIP EXPRESS US, LTD., a Delaware corporation,

       Counterclaimants,

vs.

AMERICAN TRUCKING AND TRANSPORTATION INSURANCE COMPANY, A RISK RETENTION GROUP, a Montana corporation,

       Counter-Defendant.

---

ARK INSURANCE (US), INC., a Delaware Corporation,

       Third-Party Plaintiff

vs.

KEN CRIPPEN,

       Third-Party-Defendant.

2

Before the Court is Plaintiff's motion for a temporary restraining order (Doc. 30). Plaintiff seeks a temporary restraining order against Defendants Aceway Logistics, Inc., Baja Freight, Ltd., Blueway Services, LLC, BNK Transport, Inc., CA Dedicated, LTD., Charger Logistics USA, Inc., RAV Logistics Group, Inc., and Zip Express US, Ltd. (collectively, the "Operating Defendants"). (*Id.* at 3–4.) For the reasons herein, the motion will be denied.

## BACKGROUND

Plaintiff American Trucking and Transportation Insurance Company, a Risk Retention Group, ("ATTIC") is a Montana-based group captive insurance company organized pursuant to the Liability Risk Retention Act of 1986, 15 U.S.C. § 3901 *et seq*. (Docs. 9 ¶ 1; 32 at 9.) ATTIC provides trucking liability and brokerage liability insurance to motor carriers. (Doc. 32 at 9.) Operating Defendants are entities holding either a motor-for-hire operating authority or broker operating authority from the Federal Motor Carrier Safety Administration and were named insureds under ATTIC's liability policies. (Doc. 9 ¶ 16.) Defendant ARK Insurance (US), Inc. ("ARK Insurance") is an entity formed by Operating Defendants to subscribe to, purchase, and hold shares in ATTIC. (*Id.* ¶ 17.) On March 22, 2021, ARK Insurance entered into the first amended Agreement Among American Trucking and Transportation Insurance Company, a Risk Retention Group, and its Class A Shareholders (the "Shareholders' Agreement").

3

Operating Defendants' insurance policies contained several identical endorsements, one of which required named insureds to reimburse losses paid within a named insureds' deductible. (Doc. 31 ¶ 4.) Another endorsement documented total estimated premiums for the policy year, including the mileage estimate, mileage rate, brokerage revenue estimate, and the brokerage rate. (*Id.* ¶ 13.) The policies also required named insureds to "pay any premium payment when due and in accordance with any Premium Installment Schedule granted by ATTIC []", providing that ATTIC "may audit the total premium due under the policy based on the actual exposure units at the close of the policy period." (*Id.* ¶ 19.)

On August 23, 2024, ATTIC filed their initial Complaint, asserting various causes of action against Defendants[1] for breach of contract (Counts I and II), unjust enrichment (Count III), piercing the corporate veil (Counts IV and V), and tortious interference with contract (Count VI). (Doc. 1.) Defendants filed their answer and counterclaims against ATTIC on September 16, 2024. (Doc. 6.)

On September 27, 2024, ATTIC filed an Amended Complaint—now the operative pleading—alleging the same causes of action enumerated above but adding a seventh count for injunctive relief and specific performance (Count VII). (Doc. 9 at 14–24.) ATTIC alleges that the Operating Defendants have refused to pay the audited premiums due, failed to reimburse losses paid within the deductible, and

---

[1] Defendant Andy Khera has not been served and has not appeared in this action.

4

failed to maintain adequate deductible security as required by the Shareholders' Agreement, insurance policies, and by-laws. (*Id.* ¶¶ 35–37.) The Amended Complaint seeks monetary damages from Defendants in the amount of $5,531,751.24. (*Id.* ¶¶ 26, 34–37, 80.)

On September 27, 2024, ARK Insurance filed a third-party complaint against ATTIC's CEO, Ken Crippen. (Doc. 10.) On October 11, 2024, Defendants answered ATTIC's amended complaint and filed amended counterclaims for negligence, fraud, negligent and intentional misrepresentation, unjust enrichment, breach of contract, breach of the duty of good faith and fair dealing, and breach of the Montana Securities Code. (Docs. 14; 15 ¶¶ 44–97.) Thereafter, ARK filed an amended third-party complaint against Mr. Crippen, asserting claims for negligence, fraud, negligent misrepresentation, intentional misrepresentation, unjust enrichment, breach of the Montana Securities Act, and piercing the corporate veil. (Doc. 25 ¶¶ 44–62.)

On November 12, 2024, approximately three months after filing this action, ATTIC filed the pending motion for a temporary restraining order. (Doc. 30.) The motion, including the accompanying brief and exhibits, totals 622 pages. (Docs. 30–36.) Through the motion, ATTIC first requests that Operating Defendants immediately remit $1,487,045.08 in deductible losses, $1,458,300.57 in outstanding premiums, $2,966,838 in collateral security deficiency, and seeks an equitable lien

on Operating Defendants' assets, an order prohibiting asset transfer, an order for immediate discovery, and an order to access financial records. (*Id.* at 3–5.)

## LEGAL STANDARD

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *See Kathrens v. Zinke*, 323 F. Supp. 3d 1142, 1148 (D. Mont. 2018). A preliminary injunction is an extraordinary remedy and is not awarded as a matter of right. *Winter v. Natural Res. Def Council, Inc.,* 555 U.S. 7, 24 (2008).

To obtain a preliminary injunction, a plaintiff must establish "that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Id.*, 555 U.S. at 20 (2008). The Ninth Circuit "has adopted the 'serious questions' test—a 'sliding scale' variant of the *Winter* test—under which a party is entitled to a preliminary injunction if it demonstrates (1) 'serious questions going to the merits,' (2) 'a likelihood of irreparable injury,' (3) 'a balance of hardships that tips sharply towards the plaintiff,' and (4) 'the injunction is in the public interest.'" *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). "Even under the sliding scale test, however, a plaintiff must demonstrate imminent irreparable harm; a court must not issue a TRO

without such a showing." *Shenzhen Gooloo E-Commerce Co., Ltd. v. Pilot, Inc.*, 2021 WL 6751988, at *2 (C.D. Cal. Nov. 22, 2021) (citing *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1372, 1376 (9th Cir. 1985)).

## DISCUSSION

ATTIC argues that Operating Defendants have intentionally breached their obligations to reimburse loss payments within their chosen deductible, refused to pay the audited premium covering the actual miles insured, and refused to collateralize existing losses within their chosen deductible such that a temporary restraining order is required. (Doc. 41 at 3.) Because ATTIC cannot demonstrate that it is likely to succeed on the merits nor that irreparable harm will result but-for a restraining order, the Court will deny the motion.

### A. Likelihood of Success on the Merits

ATTIC argues that it is likely to prevail on its breach of contract claim against the Operating Defendants. (Doc. 32 at 22–24.) Operating Defendants contend that, given the range of issues and factual disputes, it is unclear whether ATTIC will succeed on the merits of the Amended Complaint. (Doc. 40 at 26.) The Court agrees. The parties have yet to engage in discovery and, given the third-party claims and substantive counterclaims lodged against ATTIC, including breach of contract, the Court cannot make a decision on the merits—let alone award ATTIC millions of dollars in damages—without the requisite information provided through discovery

and a jury trial.

### B. Likelihood of Irreparable Harm

ATTIC asserts that it will suffer irreparable harm if Defendants are not immediately ordered to pay their alleged obligations under the parties' insurance contracts. (Doc. 40 at 13.) The basis for this argument appears to be a February 29, 2024, Corrective Action Order issued by the Commissioner of Securities and Insurance, Office of the Montana State Auditor ("CSI") following submission of ATTIC's December 2023 annual report. (Doc. 31 ¶ 28.) The report disclosed that ATTIC's risk-based capital ("RBC")—a regulatory framework to ensure that insurance companies have enough capital to support their risk profile—had fallen to a "company action level", as defined by Title 33 of the Montana Insurance Code. (*Id.*) As a result, the CSI issued a "Corrective Action Order" requiring ATTIC to take certain steps to increase its RBC within certain timelines. (*Id.* ¶¶ 28, 29.) The Corrective Action Order requires that ATTIC's RBC be greater than or equal to 150% on or before October 1, 2024, and greater than or equal to 200% on or before June 30, 2025. (Doc. 36-5 at 3.)

ATTIC avers that Operating Defendants' refusal to reimburse losses and refusal to pay audited premiums will render ATTIC noncompliant with the Corrective Action Order. (Doc. 32 at 26.) ATTIC maintains that its "inability to comply with the Corrective Action Order has a high likelihood of causing the CSI to

take increasingly aggressive regulatory action against ATTIC, which include[s] placing ATTIC in supervision, suspension, rehabilitation, or liquidation." (*Id.* at 26–27.) Any one of these actions, ATTIC contends, will compromise its ability to write policies for existing insureds, threaten ATTIC's existence, harm current policyholders, and compromise third-party claims. (Doc. 31 ¶ 35.) In sum, ATTIC posits that "the Operating Defendants are causing a situation which has the high likelihood of causing ATTIC to become insolvent, which it would not otherwise be but for the Operating Defendants' actions." (Doc. 32 at 2.)

Operating Defendants counter that ATTIC has failed to establish irreparable harm will result absent an immediate payment of approximately $5.9 million in damages. (Doc. 40 at 13–14.) The Court agrees. The 2024 Corrective Action Order states, in relevant part,

> [A] failure by ATTIC RRG to comply with the directives of this Order *may* result in the CSI filing a formal delinquency action in district court pursuant to § 33-2-1322, MCA, and placing ATTIC RRG in supervision, suspension, rehabilitation, or liquidating ATTIC RRG pursuant to §§ 33-2-1341 and 33-2-1342, MCA.

(Doc. 36-5 at 5) (emphasis added.) Of the four potential consequences ATTIC faces, only two—liquidation and suspension—present any possibility of irreparable harm. Moreover, ATTIC's claims are based primarily upon actions regulators "may" take; the fact that regulators "may" pursue insolvency or suspension is, at this time, entirely speculative. At any rate, ATTIC achieved an RBC of 150% as of October 1,

2024, and is therefore in compliance with the 2024 COA. (Docs. 31 ¶ 32; 36-5 at 3.) ATTIC has until June 2025 to reach 200% RBC. (Doc. 36-5 at 3.)

In reply, ATTIC emphasizes that where, as here, an insurer is acting as a surety, it need not establish an existential threat or financial catastrophe. (Doc. 41 at 7.) However, while ATTIC is correct in that financial catastrophe is not necessarily required, the authority is clear in that any alleged harm must still be irreparable. The fact that ATTIC is "far from financially healthy" does not rise to this standard. (Doc. 41 at 11.)

Finally, relying on *Liberty Mut. Fire Insurance Company v. JDS Construction Group LLC*, 2023 WL 6143559, at *6 (S.D. N.Y Sept. 20, 2023), ATTIC argues that where a party is unable to collect what is owed under the insured's collateralized deductible obligation or bonds, specific performance is the appropriate remedy. (Doc. 41 at 8–9.) In *Liberty Mutual*, the court found that the "defendants' obligation to provide [a surety] with collateral security is subject to enforcement by specific performance because the damage resulting from the failure to give security is not ascertainable, and the legal remedy is therefore inadequate." *Id.* (citation omitted). This reliance is misplaced. *Liberty Mutual* pertained to cross-motions for summary judgment; the question before this Court, however, is not whether specific performance is the appropriate remedy, but whether it is the appropriate remedy *at this stage* of the proceedings. The Court finds that it is not.

## CONCLUSION

For the foregoing reasons,

IT IS ORDERED that Plaintiff's motion for a temporary restraining order (Doc. 30) is DENIED.

DATED this 5th day of December, 2024.

_Dana L. Christensen_
Dana L. Christensen, District Judge
United States District Court